IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ARTHUR LEE PIERSON JR. | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:10-CV-717-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Arthur Lee Pierson Jr., TDCJ-ID #1383429, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Lovelady, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

In 2005 petitioner was charged with four counts of sexually assaulting B.H., his stepdaughter, who was thirteen years old at the time. (State Habeas R. at 30-31) In 2006 a jury found petitioner guilty on all counts and assessed his punishment at 99 years' imprisonment on each count, the sentences to run concurrently. (*Id.* at 32-33) Petitioner appealed his convictions, but the Second Court of Appeals affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. (*Id.* at 34-51) *Pierson v. Texas*, PDR No. 831-08. Petitioner did not seek writ of certiorari. (Pet. at 3)

Petitioner filed a state application for writ of habeas corpus, raising or more of the claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court without a hearing. (State Habeas Supp. R. at cover) He filed this federal petition for writ of habeas corpus on September 28, 2010.

The Second Court of Appeals summarized the evidence as follows:

> In 2004, appellant's former step-daughter B.H. alleged that appellant sexually assaulted her on three different occasions in October 1999, when she was thirteen years old. Each of the three incidents followed a similar pattern: appellant woke B.H. from her sleep; had sexual intercourse with her and, on one occasion, oral sex; and then made B.H. go to the bathroom and give him her underwear. Appellant threatened B.H. that he would kill her and other family members if she told anyone.

(State Habeas R. at 34-35)

## D. ISSUES

Petitioner raises five grounds for habeas relief:

(1) His trial counsel rendered ineffective assistance of counsel;
(2) The cumulative effect of his trial counsel's errors denied him effective assistance of counsel;
(3) The state engaged in prosecutorial misconduct;
(4) The appellate court erred by finding that he had failed to preserve error; and

> (5) The decision rendered by the state habeas court proceedings was obtained through fraud upon the state court in violation of his federal rights.

(Pet. at 7-8(a))

### E. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted available state remedies as to his claims, except for claim (5), enumerated above, and that the petition is neither barred by limitations or subject to the successive-petition bar. (Resp't Ans. at 7)

### F. DISCUSSION

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

3

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir.2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective by failing to introduce records from Child Protective Services to impeach the credibility of the state's witnesses. (Pet. at 7; Pet'r Mem. at 7-11). Petitioner also claims trial counsel's cumulative errors–(A) opening the door to harmful evidence, (B) failing to request proper limiting instructions; (C) failing to object to improper bolstering testimony, (D) failing to support objections with proper statutes, (E) failing to correct a false impression that misled the jury, (F) failing to argue a critical issue in closing argument, and (G) failing to prepare a defense witness to testify, denied him effective assistance of counsel. (Pet. at 7; Pet'r Mem. at 11-19)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's

4

performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. *Id.* at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

The state habeas court conducted a hearing by affidavit, and trial counsel, John Harding, responded to petitioner's allegations as follows:

> [I] have been licensed to practice law in Texas since May of 1985. I have been a briefing attorney for the Court of Criminal Appeals and served for ten years as an Assistant District Attorney in Tarrant County, Texas. I was the chief prosecuting attorney for the 372nd District Court when I left the District Attorney's office for private practice in 1996.
>
> . . .
>
> I am responding to Applicant's Writ of Habeas Corpus. The Applicant alleges three grounds of error. All three grounds alleged ineffective assistance of counsel.
>
> As to the issues in the Memorandum, the first issue is worded as "Whether . . . trial counsel failed to object to the testimony of (witness) Donna Duclow on the grounds of "improper bolstering" which prevented the claim from being preserved for appellate review." With respect to this issue it should be noted that I objected to the testimony of Donna Duclow several times. It seemed clear to me that the

complainant[']s statements to Ms. Duclow were outside the purview of Rule 803(4) of the Texas Rules of Evidence. That being said I objected to Ms. Duclow's testimony on this ground and also to her testimony as being hearsay. My objections on these grounds were constantly overruled. Initially I was concerned that the prosecution and the court interpreted Rule 103(4) [sic] Texas Rules of Evidence in an inappropriately broad manner. I objected on many issues often and vigorously. My objections were overruled by the court.

I also objected to this testimony as " bolstering." The court overruled my objection. Since the adoption of the Texas Rules of Evidence . . . bolstering is an objection which has become archaic in the view of many courts. Many authorities and practitioners no longer believe the objection to have legal viability.

I felt my objection, while arguably a valid objection, would be overruled by the trial court. It was in fact overruled. At any rate I vigorously objected to Ms. Duclow's testimony. I did this on the basis of what I regarded as a misunderstanding of the statute by the prosecutor and the court as to rule 103(4) [sic] Texas Rules of Evidence, and to hearsay and to bolstering. All of which should preserve error.

The second issue is "Whether counsel opened the door to the introduction of evidence during the guilt-innocence phase concerning the applicant's confinement in an unrelated case." In my cross examination of Detective Pitt I made an effort to discredit the Detective[']s investigation. My point was to show that the Detective spoke only to the complainant. Detective Pitt did not speak to any other officers involved in the case. Nor did he make any effort to speak to the Applicant when he was in the Tarrant County Jail on this charge. I did not then, nor do I believe now, that I did anything to open the door to the prosecution to ask about the Applicant[']s confinement in another case.

It should be noted that an extensive hearing was held outside the presence of the jury. The court made a ruling which allowed the prosecution to only ask about the Applicant being in custody in another county. The jury never heard testimony about the Applicant being in the Texas penitentiary system on an unrelated charge. Furthermore my questions of Detective Pitt did not open the door.

The third issue is "Whether counsel failed to use Child Protective Services records from a 2001 investigation to impeach the complainant's testimony." The issue concerns the contents of the CPS records in question. As I recall the records had a great deal of incriminating and damaging evidence about the Applicant. [T]he Applicant and I discussed the possibility that cross examining the complainant from the records could do the Applicant more harm than good. I explained any evidence elicited by us from the records would open the door to the harmful information in the file.

The Applicant and I decided it would not be wise to take such a risk.

(State Habeas Supp. R. at 30-31)

Harding's co-counsel, Larry Reed, responded similarly to petitioner's allegations:

As to the issues in the Memorandum, the first issue is "Whether counsel failed to object to the testimony of Donna Duclow on the grounds of 'improper bolstering' which prevented the claim from being preserved for appellate review." Ms. Duclow's testimony was admitted by the Court as for the purpose of medical diagnosis or medical treatment over numerous objections by the Defense. Mr. Harding did make an additional objection to Ms. Duclow's testimony as bolstering, which was overruled by the Court.

The second issue is "Whether counsel opened the door to the introduction of evidence during the guilt-innocence phase concerning the applicant's confinement in an unrelated case." During his cross-examination of Detective Pitt of the Fort Worth Police Department, Mr. Harding asked numerous questions concerning the extent and thoroughness of Detective Pitt's investigation. Mr. Pitt admitted that the only person he talked to was the complainant; he did not talk to the officer who took the initial report or to the Defendant. In response to Mr. Harding's question he admitted that he did not attempt to talk to the Defendant when he was in custody in Tarrant County Jail on this charge. The line of Mr. Harding's questions did not open the door to questions concerning the Defendant's incarceration.

The third issue is "Whether counsel failed to use Child Protective Services records from a 2001 investigation to impeach the complainant's testimony." I was never shown any records from Child Protective Services, but prior to the start of the voir dire there was mention of some Child Protective Service records being turned over to Mr. Harding by Mr. Boneberg, the Assistant District Attorney. In addition I was present when Mr. Harding discussed some records with the Defendant and whether they could help or hurt the defense case.

(*Id.* at 27-28)

Based on the record of the trial proceedings and counsel's affidavits, the state habeas judge enters detailed findings refuting petitioner's ineffective-assistance claims, and concluded that petitioner had failed to prove ineffective assistance under the requirements of *Strickland*.[1] (State

---

[1] Petitioner argues there should be no presumption of correctness or deference given to the
(continued...)

7

Habeas Supp. R. at 33-39) The Texas Court of Criminal Appeals denied habeas relief on the basis of those findings.

Having independently reviewed petitioner' ineffective-assistance claims in conjunction with the state court records, this court cannot say that the state courts' determination was contrary to or involved an unreasonable application of the *Strickland* standard or that it was based on an unreasonable determination of the facts as presented in the state court proceedings. Weighing the credibility of the affiants was the role of the state habeas court, and, clearly, the state court found the affidavits of counsel to be credible. *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts). Furthermore, the record supports counsel's affidavits.[2] Petitioner presents no compelling argument or evidence to rebut the state courts' adjudication of his claims, and there is nothing in the record to suggest that, but for counsel's alleged acts or omissions, the jury would have acquitted petitioner or imposed lower sentences.

---

[1](...continued)
state habeas court's findings on his habeas petition because the state habeas judge conducted only a paper hearing and because the trial judge and the state habeas judge were not the same. (Pet'r Mem. at 10) Contrary to petitioner's assertions, however, a state court's factual determinations are entitled to a presumption of correctness under § 2254(e)(1), regardless of whether the state habeas court held only a paper hearing, or whether the state habeas judge was the same judge who presided at trial. *See Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004); *Bass v. Dretke*, 82 Fed. Appx. 351, 2003 WL 22697282, at *3 (5th Cir. Nov. 14, 2003).

[2]Neither party produced a copy of the 2001 CPS records in question, however the state's "Brady Disclosure" before trial reflects the CPS investigation was on B.H.'s brother. (Clerk's R. at 79)

### 3. Prosecutorial Misconduct

Petitioner claims the prosecution engaged in improper methods to secure his convictions by intentionally presenting its evidence in a manner designed to give the jury the false impression that, prior to 2004, the victim, who waited five years to report the abuse, never had an opportunity to safely report the alleged sexual abuse, when the prosecution was well aware the victim was interviewed by Child Protective Services in 2001. (Pet. at 7; Pet'r Mem. at 19-20)

The presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that is not corrected, violates a criminal defendant's due process rights, if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Petitioner has presented no evidence that the prosecution intentionally elicited false testimony or misled the jury. The victim specifically testified that she did not report petitioner's conduct to authorities until 2004, although she had the opportunity to do so earlier, because of petitioner's threats against her and members of her family. (RR, vol. 4, at 98-99) Petitioner's conclusory allegations of prosecutorial misconduct are insufficient to merit federal habeas relief. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir.1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation). Further, any misleading impression was corrected by defense counsel on cross-examination. The state courts' rejection of this claim is neither contrary to, or an unreasonable application of, clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented in the state courts.

### 4. Appellate Court Error

Petitioner claims the appellate court erred by finding that he failed to preserve error as to the testimony of Donna Duclow, the sexual assault nurse examiner ("SANE"), about statements made

to her by the victim some five years later. (Pet. at 8; Pet'r Mem. at 20-25) Defense counsel objected vigorously to Duclow's testimony as hearsay and improper bolstering and obtained a running objection at trial. (RR, vol. 3, at 116-19, 123)

The appellate court addressed the issue as follows:

> In his first point, appellant argues that the trial court improperly admitted B.H.'s 2004 statements to sexual assault nurse Donna Duclow over his rule 803(4) objection.
>
> Texas Rule of Evidence 803(4) contains a hearsay exception for statements made for medical diagnosis or treatment. Appellant claims Duclow's testimony does not fit under this exception. Where substantially the same evidence complained of on appeal is received without objection from a different source, however, an appellant forfeits his complaint regarding admission of the objectionable testimony.
>
> Duclow interviewed B.H. on September 3, 2004 at John Peter Smith Hospital ("JPS"). As was her practice, she wrote B.H.'s history "word for word." Over appellant's hearsay objection, Duclow testified that B.H. stated the following:
>
> • The "first event" occurred on October 22, 1999 between 2 and 3 a.m. Appellant entered B.H.'s room, woke her, picked her up, placed her on the floor, and had sexual intercourse with her. He threatened to kill her, her sister, or grandmother if she told anyone. He said he would "pop [her] cherry." Afterwards, appellant told B.H. to get her underwear and go into the bathroom, and he asked whether she was bleeding.
>
> • On October 12, 1999[3] appellant again woke B.H. from her sleep in the middle of the night, got her out of her bed, and laid her down on her floor. Appellant performed oral sex on her and then had sexual intercourse with her. He told her not to tell because her mom and sister would be mad because appellant paid the bills. He directed her to go to the bathroom and took her underwear.
>
> • Just before Halloween 1999, appellant again came and got B.H. from her bed, pushed her toward the living room, and laid her down there. He had sexual intercourse with her, first with appellant on top

---

[3]The court is aware that the dates cited by the state court are not chronological. This error is in the court's original opinion.

and then with B.H. in that position. A woman called "Auntie" was sleeping on the couch in the living room. Afterwards, B.H. went to the bathroom, and appellant took her underwear.

Duclow did not perform a physical examination because "after a five-year period any trauma or injury directly related to the assault [would be] healed, gone, or not visible."

The following day, B.H. testified to the following:

• On October 2, 1999, appellant came into her room around 2 or 3 a.m., woke her up, took her off her bed, and put her on the floor. Appellant kissed her on her neck and breast, said he would "pop her cherry," and asked her if she wanted to be his girlfriend. He then had sexual intercourse with her, threatening that if she told anyone, there would be no one to take care of the family. After it ended, he pushed her towards the restroom, told her to give him her underwear, and asked if she was bleeding.

• On October 12, 1999, around 3 a.m., appellant woke B.H. up, picked her up off her bed, and put her on the floor. He performed oral sex on her and then had sexual intercourse with her. He threatened to kill her, her sister, and her grandmother if she told anyone. He then told her to go to the bathroom and took her underwear.

• At the end of October 1999, before Halloween, around 1 or 2 a.m., appellant woke her up and pushed her into the living room where a woman she called "Auntie" was asleep on the couch. There appellant had sexual intercourse with B.H.; at first appellant was on top and then he moved B.H. to that position. Afterwards, appellant had her go to the bathroom and give him her underwear.

Appellant did not object to any of this testimony.

After B.H. described the three occurrences, she explained that she did not immediately contact the police because of appellant's threats. In 2004, after graduating from high school, she approached a probation officer who directed her to CPS and the police, and she eventually spoke to sexual assault nurse Duclow. After the prosecutor asked, "And obviously you told [Duclow at JPS] what happened, right?" appellant attempted to "renew" the hearsay objection he made the day before to Duclow's testimony.

11

>The record indicates that appellant's objection referred to the State's last question, "And obviously you told [Duclow at JPS] what happened, right?," and if the objection was intended to relate back to B.H.'s descriptions of the sexual assaults, it was untimely for that purpose and did not preserve error as to that testimony. Thus, appellant did not make a proper objection to B.H.'s testimony describing the sexual assaults.
>
>Duclow and B.H.'s testimony was very similar. Both described sexual assaults appellant perpetrated on B.H. on three nights in October 1999. Details such as appellant's words, the specific sexual actions he performed (and the order thereof), the locations of the assaults, the presence of Auntie, and appellant's conduct and demands following each assault were practically identical.
>
>Because appellant did not object to the relevant portions of B.H.'s testimony, and it is substantially the same as what he now complains about on appeal (Duclow's testimony), he forfeited the error, if any, regarding Duclow's testimony.

(State Habeas R. at 35-39) (footnotes and citations omitted)

The state's preservation-of-error rule is an adequate and independent state ground that procedurally bars federal habeas review of petitioner's claim. *Sharp v. Johnson*, 107 F.3d 282, 285-86 (5th Cir. 1997). Furthermore, regardless of whether the issue was preserved for appellate review, a state court's evidentiary rulings justify the granting of habeas relief only if they violate a specific constitutional right or render the trial fundamentally unfair. *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999). Habeas relief is not warranted unless the wrongfully admitted evidence "played a crucial, critical, and highly significant role in the trial." *Id.* (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986)). Texas appellate courts have consistently affirmed that a nurse's testimony may satisfy the Rule 803(4) exception. *In re M.M.L.*, 241 S.W.3d 546, 553 (Tex. App.–Amarillo 2006, pet. denied) (surveying cases permitting nurses to testify about statements made by the victim during an exam); *Taylor v. State*, 268 S.W.3d 571 (Tex. Crim App. 2008). Texas appellate courts have also held "[t]he purpose of a sexual assault examination is to determine

whether the complainant has been sexually assaulted and to assess whether medical attention is required;" therefore, "statements during the examination that describe the sexual assault are pertinent to medical diagnosis and treatment" and are admissible. *Shackelford v. State*, No. 14-08-218-CR, slip op., 2009 WL 508478 at *3 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd) (citing *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.–Fort Worth 1999, pet. ref'd)). *But see Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.–Fort Worth 2005, pet' ref'd) (holding expert's testimony diagnosing sexual abuse based solely on the complaining witness's self-reported history was an improper attempt to bolster the complaining witness's credibility and a direct comment on her truthfulness).

Duclow testified that the details of a victim's account of sexual abuse are "very important" to assess their safety, determine the effects of the abuse on the victim both emotionally and physically, and for purposes of medical diagnosis and treatment. (RR, vol. 3, at 109, 131-33) Duclow testified that B.H. was given options for "different types of support [and] counseling" and recommended to make a "a follow up for STD testing." (*Id.* at 137-38) Duclow further testified that delayed outcries were not uncommon among children and, in those circumstances, it is not unusual to not perform a physical exam. (*Id.* at 118, 129) Further, the trial court sustained petitioner's objections to the state's question "Just because she waited that length of time, does that mean that she's making this up?," Duclow's testimony that she felt petitioner was "using leverage" on B.H. by threatening her and her family members, and Duclow's testimony regarding psychological reasons for delayed outcries. (*Id.* at 115, 121, 129-30, 133-34) Finally, Duclow acknowledged during cross-examination that she does not "make conclusions as to the veracity of the person" during an evaluation. (*Id.* at 139-40) Based on this record, Duclow's testimony was admissible under rule

13

803(4) of the Texas Rules of Evidence and did not offer a diagnosis that would bolster B.H.'s credibility.

### 5. State Habeas Proceedings

Lastly, petitioner claims the decision rendered by the state habeas court was obtained through fraud upon the court by the prosecution and his trial counsel, in violation of his constitutional rights. (Pet. at 8(a); Pet'r Mem. at 23-25) Specifically, petitioner claims "[b]oth the State and Mr. Harding knew full well that the CPS report had absolutely nothing to do with the Petitioner and was strictly about the investigation of the Complainant's brother. (Clerk's R. at 68) Therefore, their actions in submitting the false affidavit [of counsel] constitutes fraud upon the court." (Pet'r Mem. at 24) Petitioner's claim ultimately amounts to a challenge to the state habeas proceeding itself, a challenge foreclosed by the Fifth Circuit precedent. *Rudd v. Johnson*, 256 F.3d 317, 319020 (5th Cir.), *cert denied*, 534 U.S. 1001 (2001) (noting that "[a] long line of cases from our circuit dictates that infirmities in state habeas proceedings do not constitute grounds for relief in federal court") (internal quotation omitted)).

## II. RECOMMENDATION

Petitioner has not demonstrated that he is entitled to federal habeas relief; thus, it is recommended that the petition be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until December 1, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until December 1, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 15, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

15